UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
------------------------------------------------------------  X
                                                              :
MICHAEL LADY,                                                 :
                                                              :
                        Plaintiff,                            :    COMPLAINT
                                                              :
              -against-                                       :    PLAINTIFF REQUESTS A
                                                              :    TRIAL BY JURY
MOTUS, LLC,                                                   :
                                                              :
                        Defendant.                            :
                                                              :
------------------------------------------------------------  X
```

Plaintiff, Michael Lady ("Plaintiff" or "Lady"), by his attorney, Andrea Paparella, for his Complaint against Motus, LLC (hereinafter referred to as "Defendant" or "Motus") alleges as follows:

## THE PARTIES

1.     Plaintiff is a Colorado resident, and citizen of Colorado.

2.     Defendant is, upon information and belief, a Massachusetts corporation with its principal place of business in Boston, Massachusetts.  Accordingly, Motus is, for the purposes of 28 U.S.C. §1332, a citizen of Massachusetts.

## THE NATURE OF THE ACTION

3.     This is a civil action for damages and remedies brought for, among other things, breach of contract, and a violation of the Massachusetts Wage Act for failure to pay wages.

4.     Specifically, the parties negotiated two employment agreements, the first in 2007 (the "2007 Agreement"), and the second in 2013 (the "2013 Agreement") regarding, among other things, Motus's compensation payments to Lady, including Renewal Commissions.  See plaintiff's Exhibits 2 and 3, respectively.

5.     From 2014 through 2016, Motus purported to supersede the 2007 Agreement and 2013 Agreement with certain Sales Compensation Plans (collectively the "Plans") that defined

the commission plan for Motus's sales staff.

6.     Lady's sales commissions were nominally affected by the Plans, but importantly, the Plans specifically excluded Lady's 2007 Agreement Renewal Commissions, i.e. the 2007 Agreement was still in effect regarding Renewal Commissions.

7.     Under the 2007 Agreement, Motus agreed to pay Lady Renewal Commissions following the termination of his employment for a period equal to the length of his employment with Motus, i.e. ten years, and under the 2013 Agreement Motus agreed to pay Lady Renewal Commissions for a period equal to the length of his employment that exceeded five years, i.e. five years and seven months.

8.     The parties both executed the 2007 Agreement.

9.     Motus, however, never executed the 2013 Agreement.

10.     Both Agreements enabled Motus to void payment of the Renewal Commissions in the event Lady's employment was terminated for cause.

11.     Motus employed Lady for more than ten years, and in or about May 2017, Motus terminated Lady's employment for alleged cause.

12.     Motus claimed Lady improperly treated other employees and clients, but no evidence of this was ever provided.

13.     Lady submits that the termination was a pretext for Motus to avoid paying Lady his Renewal Commissions, which under the 2007 Agreement equal approximately $4,213,636.80, and under the 2013 Agreement equal approximately $2,352,613.88.

**JURISDICTION AND VENUE**

14.     The amount in controversy in this matter exceeds the sum of $75,000.00, exclusive of interest and costs, and is between citizens of different states.  Diversity jurisdiction therefore exists pursuant to 28 U.S.C. § 1332.

15.     A substantial part of the events or omissions giving rise to these claims occurred within the state of Massachusetts, and venue is therefore appropriate in this Court pursuant to 28 U.S.C. § 1391(a).

16.     This Court has jurisdiction over this action under 28 U.S.C. § 1332, and principles of supplemental jurisdiction, 28 U.S.C. § 1367.

17.     Venue is proper in this district under 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to Lady's claims occurred in the District of Massachusetts.

18.     Lady is an employee within the meaning of the Massachusetts Wage Act §§ 148, 150 whose Renewal Commission is a "wage" as defined in the Act.

19.     Lady filed a complaint with the Massachusetts Attorney General, and the Attorney General assented in writing to Lady instituting and prosecuting in his own name, and on his own behalf, a civil action for damages incurred.  See Plaintiff's Exhibit 1.

## FACTS

20.     In or about 2007, Motus recruited Lady to join a startup venture known at that time as Corporate Reimbursement Services ("CRS").

21.     CRS's primary service was gathering and managing auto allowance data and software for companies that employ large numbers of drivers/mobile employees.

22.     At this time, Lady was working for a competitor service in the same industry, and he was one of that company's top sales people.

23.     The President of CRS, Gregg Darish ("Darish"), was a former coworker of Lady, and knew Lady's abilities and determined he would be a good fit at CRS.

24.     Details concerning Lady's compensation were negotiated over a period of several months between Darish and Lady.

3

25.     In or about June 2007, both CRS and Lady memorialized their respective obligations by signing an Employment Agreement (the "2007 Agreement").  See plaintiff's Exhibit 2.

26.     The 2007 Agreement was drafted by CRS, or, upon information and belief, an agent of CRS.

27.     Lady was responsible for business development and client recruitment for the western United States territory, within that territory Lady maintained approximately 95% of Motus's client base, i.e. clients were brought on exclusively by Lady.

28.     Lady was also closely involved in ongoing client/account management renewals as well as some of the larger client implementations.

29.     Of particular importance to the parties in the 2007 Agreement was the existence of a clause regarding commissions that would be paid to Lady if his employment ended—the so-called "Renewal Commissions."

30.     The 2007 Agreement also contained a clause that stated if Lady's employment was terminated "for cause" he would not be entitled to any Renewal Commissions "on contracts signed after the date of termination."  See para. 2(e) of Exhibit 2 (emphasis added).

31.     The same clause contained language that defined Motus's obligation to pay Renewal Commissions when Lady's employment ends for "any other reason" other than cause.

32.     The clause states:

If Employee is employed for more than five (5) years, Employee's right to such continued Renewal Commission will last for the equal amount of time Employee worked for the Company, and the last completed month of employment shall define the term of such obligation on the part of the Company (e.g. if employed for 6 years, 6 months and 3 weeks, Employee would be entitled to those Renewal Commission Employee otherwise would have received if employed for another 6 years and 6

4

months that follow the date of termination.  Id.

33.     Under this clause of the 2007 Agreement, Motus owes Lady ten years of

Renewal Commissions, or $4,213,636.80.

34.     The following is a list of all of Plaintiff's clients with their corresponding

annual Renewal Commissions:

| CLIENT | RENEWAL COMMISSION OWED |
|---|---|
| 1. AM | $20,034.00 |
| 2. BSH | $5,712.00 |
| 3. BC | $1,830.40 |
| 4. DVC | $6,500.00 |
| 5. DE | $7,781.00 |
| 6. EEG | $300.00 |
| 7. G&MOC | $761.90 |
| 8. GR | $360.00 |
| 9. GBL | $319.00 |
| 10. GC | $8,736.00 |
| 11. HD | $57,780.00 |
| 12. HM | $1,450.00 |
| 13. JG | $12,476.38 |
| 14. LT | $13,659.00 |
| 15. MDTC | $231,512.00 |
| 16. NG | $11,406.10 |
| 17. PT | $7,059.00 |
| 18. PB | $12,877.80 |
| 19. PP&S | $351.00 |
| 20. SD | $1,170.00 |
| 21. SE | $507.00 |
| 22. SPA | $9,021.00 |
| 23. TB | $360.90 |
| 24. VA | $3,150.00 |
| 25. W&Z | $917.60 |
| 26. WL | $83.60 |
| 27. WSS | $5,248.00 |
| **TOTAL** | **$421,363.68** |

35.     The annual Renewal Commissions that Motus paid Lady comprised approximately 70% of his total annual compensation.

36.     In or about February 2013, Motus presented Lady with a revised employment agreement.  See plaintiff's Exhibit 2.

37.     This 2013 Agreement was similar in many respects to the 2007 Agreement, except it reduced Lady's Renewal Commissions in half, i.e. Motus would only pay Lady Renewal Commissions for a period of five years and seven months.  See para. 2(c)(iii) of Exhibit 3.

38.     In 2013, the parties met to discuss Lady's overall compensation package, including Motus's payment of the Renewal Commissions.

39.     For example, Motus wanted to transition Lady away from a commission plan to shares in company stock.

40.     The parties, however, never reached an agreement on Motus paying him in company stock.

41.     Lady signed the 2013 Agreement, but at the time Lady returned the signed 2013 Agreement, Motus was embroiled in multiple lawsuits, and never countersigned the 2013 Agreement.

42.     In or about June 2014, CRS changed its name to Motus, LLC.

43.     Motus's services were unchanged, and Lady's duties and responsibilities did not change either.

44.     Several years later, when Motus terminated Lady's employment, the termination letter sent to Lady was accompanied by a copy of Motus's unsigned 2013 Agreement.

6

45.     Beginning in 2014, and each year thereafter, Motus distributed to its sales staff, including Lady, a Sales Compensation Plan (the "Plans").

46.     The Plans were designed to define the commissions for its sales staff, including Lady.

47.     The Plans' net effect on Lady, and all other salespeople, was to reduce their commission rates on new clients; the rates were now paid out according to an annual sales plan instead of individual client contract.

48.     The Plans, however, did not affect Lady's pre-existing client commissions, i.e. the Renewal Commissions.

49.     Between 2014 and 2017, while Lady was employed by Motus, Motus failed to pay Plaintiff certain commissions totaling $61,133.95.

50.     The following is a list of all of Lady's clients with their corresponding owed commissions:

|    | CLIENT | COMMISSIONS OWED |
|----|--------|------------------|
| 1. | AST | $225.00 |
| 2. | CDA | $13,890.00 |
| 3. | CORE | $3,372.00 |
| 4. | E&JG | $2,265.60 |
| 5. | EFT | $1,785.90 |
| 6. | IR | $3,200.25 |
| 7. | MDTC | $4,865.00 |
| 8. | NVSV | $26,110.00 |
| 9. | NVSV-R | $3,916.50 |
| 10. | SP | $353.70 |
| 11. | WM | $1,150.00 |
|    | **TOTAL** | **$61,133.95** |

51.     During his ten-year employment with Motus, Lady consistently performed at the highest levels of sales produced at Motus.

52.     Motus bestowed on Lady numerous awards for outstanding sales performance including "Rockstar of the Year" for 2014 and 2015.

53.     Lady was one of approximately twelve of Motus's salespeople, and his sales performance was the largest in the company by a wide margin; his total revenue contribution to the company was approximately 44% of the company's entire sales.

54.     On or about May 9, 2017, Lady conference-called with the Chief Revenue Officer Rob Headley and Chief People Officer Kristen Dooley ("Dooley") to have, according to Motus, his annual review.

55.     During this conversation, Dooley told Lady that his position was being eliminated, and he was being terminated for cause.

56.     Lady asked what cause existed for the termination of his employment, but Dooley provided nothing specific.  Dooley told Lady the specific reasons for termination for cause would be included in a termination letter.

57.     Lady emailed Dooley, and requested more information about why his position was terminated, but neither Motus nor Dooley responded to this request.

58.     The stated reasons for the termination of his employment as outlined in the termination letter was the first time the Lady heard of such criticism or issues.

59.     Lady never received his 2016 annual review.

### FIRST CLAIM
### (Breach of Contract – 2007 Agreement)

60.     Lady repeats and realleges the allegations contained in paragraphs 1 through

59 as if separately set forth herein.

61.    Lady has performed all acts required of him under the 2007 Agreement.

62.    By its actions described herein, Motus breached its contractual obligations under the 2007 Agreement.

63.    Motus's breach was material.

64.    By its actions and inactions described herein, Motus is in default and has materially breached its obligations under the 2007 Agreement.

65.    As a result of these material breaches, Lady was irreparably harmed.

66.    Lady has no adequate remedy at law, and can only be made whole if Motus is required to specifically perform the terms of the 2007 Agreement.

67.    In the alternative, Lady was damaged in an amount to be proven at trial, but believed to exceed the amount of $4 million.

## SECOND CLAIM
### (Breach of Contract – 2013 Agreement
### In The Alternative)

68.    Lady repeats and realleges the allegations contained in paragraphs 1 through 67 as if separately set forth herein.

69.    Lady performed all acts required of him under the 2013 Agreement.

70.    By its actions described herein, Motus breached its contractual obligations under the 2013 Agreement.

71.    Motus's breach was material.

72.    By its actions and inactions described herein, Motus defaulted and materially breached its obligations under the 2013 Agreement.

73.    Because of Motus's material breaches Lady was irreparably harmed.

74.    Lady has no adequate remedy at law, and can only be made whole if Motus

is required to specifically perform the terms of the 2013 Agreement.

75.    In the alternative, Lady was damaged in an amount to be proven at trial, but believed to exceed the amount of $2 million.

### THIRD CLAIM
**(Breach of Contract – Unpaid Commissions Under The Plans)**

76.    Lady repeats and realleges the allegations contained in paragraphs 1 through 75 as if separately set forth herein.

77.    Lady performed all acts required of him under the Plans.

78.    By its actions described herein, Motus breached its contractual obligations under the Plans.

79.    The breach by Motus was material.

80.    By its actions and inactions described herein, Motus is in default and has materially breached its obligations under the Plans.

81.    As a result of these material breaches, Lady has been irreparably harmed by this breach of contract.

82.    Lady has no adequate remedy at law, and can only be made whole if Motus is required to specifically perform the terms of the Plans.

83.    In the alternative, Lady was damaged in an amount to be proven at trial, but believed to exceed the amount of $61,133.95.

### FOURTH CLAIM
**(Unjust Enrichment)**

84.    Lady repeats and realleges the allegations contained in paragraphs 1 through 83 as if separately set forth herein.

85.    Motus was enriched by Lady's labor and services.

86.     Motus was enriched at lady's expense.

87.     It is against equity and good conscience to permit Motus to retain that which is owed to Lady.


## FIFTH CLAIM
### (Breach of Covenant of Good Faith and Fair Dealing)

88.     Lady repeats and realleges the allegations contained in paragraphs 1 through 87 as if separately set forth herein.

89.     Implied in every contract is a covenant of good faith and fair dealing.  This covenant prohibits either party from engaging in any act that will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract.

90.     The parties' purpose in having these Agreements was so that Lady could earn his commissions while providing the necessary expertise to aid in the establishment and subsequent expansion of the business.

91.     Due to deliberate refusal to adhere to the terms of the Agreements it has prevented Plaintiff from receiving the benefits of the Agreements.  Motus's conduct is a breach of the duty of good faith and fair dealing implied in the Agreements, and the stated reason for the termination of Lady's employment is a pretext for Motus's breach of the Agreements.

92.     Lady has no adequate remedy at law.  Lady can only be made whole if Motus is required to specifically perform the terms of the Agreements.

93.     In the alternative, Lady was damaged as set forth in the preceding paragraphs.


## SIXTH CLAIM
### (Violation of Massachusetts Wage Act Section 148
### Unpaid Wages/Commissions Under The Plans)

94.     Lady repeats and realleges the allegations contained in paragraphs 1 through

93 as if separately set forth herein.

95.    Lady was an employee within the meaning of the Massachusetts Wage Act §§ 148, 150 whose Renewal Commission is a "wage" as defined in the Act.

96.    Lady filed a complaint with the Massachusetts Attorney General, and the Attorney General assented in writing to Lady instituting and prosecuting in his own name and on his own behalf, a civil action for damages incurred.

97.    The amount of Lady's commissions has been definitively determined, and has become due and payable to him.

**SEVENTH CLAIM**
**(Violation of Massachusetts Wage Act Section 148**
**Unpaid Wages/Commissions Under The 2007 Agreement)**

98.    Lady repeats and realleges the allegations contained in paragraphs 1 through 97 as if separately set forth herein.

99.    Lady is an employee within the meaning of the Massachusetts Wage Act §§ 148, 150 whose Renewal Commission is a "wage" as defined in the Act.

100.    Lady filed a complaint with the Massachusetts Attorney General, and the Attorney General assented in writing to Lady instituting and prosecuting in his own name and on his own behalf, a civil action for damages incurred.

101.    The amount of Lady's commissions has been definitively determined, and has become due and payable to him.

**EIGHTH CLAIM**
**(Violation of Massachusetts Wage Act Section 148**
**Unpaid Wages/Commissions Under The 2013 Agreement)**

102.    Lady repeats and realleges the allegations contained in paragraphs 1 through 101 as if separately set forth herein.

103.     Lady is an employee within the meaning of the Massachusetts Wage Act §§ 148, 150 whose Renewal Commission is a "wage" as defined in the Act.

104.     Lady filed a complaint with the Massachusetts Attorney General, and the Attorney General assented in writing to Lady instituting and prosecuting in his own name and on his own behalf, a civil action for damages incurred.

105.     The amount of Lady's commissions has been definitively determined, and has become due and payable to him.

WHEREFORE, while reserving the right to seek additional damages as available, Plaintiff demands judgment against Defendant as follows:

A.     On the First Claim, for specific performance of the 2007 Agreement or, alternatively, for damages exceeding the sum of four million dollars;

B.     On the Second Claim, for specific performance of the 2013 Agreement or, alternatively, for damages exceeding the sum of two million dollars;

C.     On the Third Claim, for specific performance of the Plans, alternatively, for damages exceeding the sum of sixty thousand dollars;

D.     On the Fourth Claim, damages including attorney's fees, interest and costs;

E.     On the Fifth Cause of Action, damages including attorney's fees, interest and costs;

F.     On the Sixth Claim, damages including treble damages, attorney's fees, interest and costs.

G.     On the Seventh Claim, damages including treble damages, attorney's fees, interest and costs.

H.     On the Eighth Claim, damages including treble damages, attorney's fees, interest and costs.

I.      Such other and further relief as this Court deems just and proper.


Dated:  August 29, 2017
        New York, N.Y.


                                        Law Office of Andrea Paparella, PLLC

                                        By:  /s/ Andrea M. Paparella_____
                                        Andrea M. Paparella (BBO# 658254)
                                        150 W. 28th Street, Suite 1603
                                        New York, New York 10001
                                        Telephone: (212) 675-2523
                                        Facsimile: (914) 462-3287
                                        Email: ap@andreapaparella.com


                                        OF COUNSEL

                                        BRENDAN CHAO
                                        Attorney & Counsellor at Law

                                        By:     /s/ Brendan Chao_____
                                            Brendan Chao
                                            (*pro hac vice* motion forthcoming)
                                            50 Merrick Road, Suite 200
                                            Rockville Centre, N.Y. 11570
                                            (516) 466-2033 (Telephone)
                                            (516) 466-2007 (Facsimile)
                                            bchao@bchaolaw.com

                                        *Attorneys for Plaintiff*